GEORGE G. WEICKHARDT (SBN 58586)
WENDY C. KROG (SBN 257010)
ROPERS, MAJESKI, KOHN & BENTLEY
150 Spear Street, Suite 850
San Francisco, CA  94105
Telephone:    (415) 543-4800
Facsimile:    (415) 972-6301
Email:         george.weickhardt@rmkb.com
               wendy.krog@rmkb.com

Attorneys for Plaintiff
JPMORGAN CHASE BANK, N.A., A National
Banking Association

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JPMORGAN CHASE BANK, N.A., A National Banking Association,<br><br>Plaintiff,<br><br>v.<br><br>OREGON PARK SENIOR APARTMENTS COOPERATIVE, A California Public Benefit Corporation, ANDRE NIBBS, an individual; DOUGLAS BUTLER, an individual; JUANITA EDINGTON, an individual; KEVIN WIGGINS, an individual;  DALE ANDERS, an individual; WILLIAM TILLER an individual;  and KENNETH AKA AJA FESAH JACKSON, an individual;<br><br>Defendant. | CASE NO.<br><br>**COMPLAINT FOR INTERPLEADER AND DECLARATORY RELIEF** |

Plaintiff JPMORGAN CHASE BANK, N.A. alleges as follows:

**PARTIES**

1.      Plaintiff JPMorgan Chase Bank, N.A.("JPMC") is a banking association chartered under the laws of the United States of America, and its charter states that its main office is located in the State of Ohio.  It is therefore a citizen of the State of Ohio.

2. Defendant Andre Nibbs is a resident of this District and a citizen of the State of California.

3. Defendant Douglas Butler is a resident of this District and a citizen of the State of California.

4. Defendant Juanita Edington is a resident of this District and a citizen of the State of California.

5. Defendant Kevin Wiggins is a resident of this District and a citizen of the State of California.

6. Defendant Dale Anders is a resident of this District and a citizen of the State of California.

7. Defendant William Tiller is a resident of this District and a citizen of the State of California.

8. Defendant Kenneth aka Aja Fesah Jackson is a resident of this District and a citizen of the State of California.

9. Defendant Oregon Park Senior Apartments Cooperative ("OPSA") is a non-profit public benefit corporation organized under the laws of the State of California with its principal place of business located in the City of Berkeley. It is a citizen of the State of California. Its Articles of Incorporation state that the specific purpose for which it is organized is to provide resident-owned affordable housing for low-income seniors through a limited equity housing cooperative.

**JURISDICTION AND VENUE**

10. Jurisdiction of this Court is founded upon diversity of citizenship in that Plaintiffs and Defendants are citizens of different states and the amount in controversy exclusive of interest and costs exceeds $75,000.

11. The Northern District of California is the proper venue for this action because all of the individual defendants reside in this District and the principal place of business of defendant OPSA is located in this District. The events that gave rise to this action occurred in this District.

RC1/7769872.1/DJ2 - 2 - COMPLAINT FOR INTERPLEADER AND DECLARATORY RELIEF

**GENERAL ALLEGATIONS**

12. The Articles of Incorporation of OPSA state that it is organized under the non-profit public benefit corporation law of the State of California. It owns and operates a building located at 1425 Oregon Street, Berkeley, California 94702, which consists of resident-owned affordable housing for low-income seniors.

13. A copy of the Bylaws of OPSA is attached hereto as Exhibit A. These Bylaws provide in Section 2.1 that members shall have the right to occupy an apartment, pay monthly assessments, and have voting rights. Section 5.1 provides that members shall meet at least once a year. Under Section 5.2, the Board may also call a special meeting of the members and give notice as provided in Section 5.3. Section 5.4 provides that at any meeting of the members, the presence in person of members representing 50% of the membership constitutes a quorum.

14. Section 6.1 provides that the Board of Directors shall be elected by the members and shall consist of seven directors who are members of the corporation. Section 6.3 provides that the Board shall adopt reasonable election and nomination procedures including the following:

> "Directors shall be elected by a majority of the members present at a membership meeting at which a quorum is present. . . . Voting for directors shall be secret written ballot."

Section 6.9 provides that the Board shall be responsible for the overall financial affairs of the corporation including insuring that all books and accounts are kept current and accurate; that reserve funds are maintained, and that surplus funds are invested in a manner which will provide maximum benefits to the corporation. Section 6.10 provides that the Board is empowered to approve contracts for goods and services and direct the payment of funds for expenditures, contract for casualty, liability and other insurance on behalf of the corporation and pay taxes and assessments.

15. Section 7.1 provides that the officers of the corporation shall be a President, Vice President, Secretary and Treasurer. The officers are to be elected by the Board (Sec. 6.9(m)). Section 7.2 provides that the President shall preside over all meetings of the members and the Board and shall sign all occupancy agreements, mortgages, deeds and other written instruments and shall co-sign all checks and promissory notes other than those issued for routine expenditures.

16. Section 9.1 provides that any director or Officer may resign at any time. Section 9.3 provides that "Replacement of directors or officers shall be accomplished according to the same electoral practices that would be used for the regular election of individual to these positions."

17. The OPSA maintains the following accounts at the JPMC branch located on Shattuck Avenue in Berkeley:

   a) Business checking account ending in 1307;

   b) Business savings account ending in 5229;

   c) Money market account ending in 2261;

These three accounts shall be referred to hereinafter as "the Deposit Accounts." The total balance of the Deposit accounts is in excess of $75,000. The OPSA is also the borrower on a commercial loan account number ending in 6561. JPMC also holds a reserve account 9027 issued in trust in the name of OPSA.

18. On or about December 12, 2014, JPMC received a signature card for authorizing the following persons to sign checks: Defendant Andre Nibbs, whose title was given as President, and Douglas Butler whose title was given as Treasurer. The signature card was stated to apply to accounts ending in 1307, 5229, and 2261. A true and correct copy of tis signature card is attached as Exhibit B. It is JPMC's understanding that Andre Nibbs claims to be the duly elected President of the OPSA and that Douglas Butler claims to be the duly elected Treasurer of the OPSA.

19. In or about January 14, 2015, the Law Offices of John Burris was retained to represent a group of members from the OPSA, which JPMC is informed and believes includes defendants Edington, Wiggins, Anders, Tiller and Jackson. Attached hereto as Exhibit C is a true and correct copy of a letter dated January 14, 2015 from the Law Offices of John Burris listing the grievances and concerns of these members including, but not limited to the appointment of members to the Board of Directors without following proper election procedures, firing OPSA staff without notice and without Board approval, denying members the ability to participate in meetings, and changing signatories on checking accounts and reserve accounts at JPMC without

1  Board approval.

2  20. JPMC also obtained a copy of memo by James Cook of the Law Offices of John
3  Burris dated January 11, 2015, a true and correct copy of which is attached as Exhibit D, listing
4  additional grievances, including the hiring of a management consultant by Andre Nibbs without
5  Board approval, compromising security of apartment keys and rent payments, denying members
6  participation in meetings, not properly maintaining and staffing the building and "senior abuse
7  and criminal exploitation."

8  21. On or about January 15, 2015, JPMC also received a document from the
9  management consultant referenced above, namely, Ibrahim Moss, entitled "Memorandum of
10 Facts in Support of OPSA's Board of Directors." A true and correct copy of this document is
11 attached as Exhibit E. This memo stated that there was a "war" between what he identified as the
12 duly elected Board of Directors and Officers, including Nibbs and Butler, and a group of
13 members who were said to have "a history of being scammers." The so-called scammers were
14 said to have "a clear history of financial waste, abuse of authority and egregious disregard for
15 controlling provisions of the OPSA's bylaws." The memo identified defendants Edington,
16 Wiggins, Anders, Tiller and Jackson as "chief' among the "scammers." Various purported
17 examples were then given of the improper conduct of these defendants.

18 22. After receiving these various communications, JPMC sent a letter dated January
19 13, 2015 to Oregon Park Senior Apartments. A true and correct copy of the letter is attached as
20 Exhibit F. The letter stated that JPMC had received correspondence and documentation from two
21 competing persons or groups claiming to be authorized representative of the OPSA and
22 requesting access to the Deposit Accounts at Chase and the funds of the customer. Because of
23 these competing and conflicting claims on the Chase accounts, JPMC advised the OPSA that it
24 would:

25  "prohibit all external withdrawals from the deposit
    accounts(including payment of checks drawn on the deposit
26  accounts) until and unless (i) all competing parties agree on
    instructions for distribution of the funds in the deposit accounts or
27  (ii) the bank receives documentation satisfactory to the bank
    evidencing such agreement or the authority of a designated
28  representative of the customer to have signing authority for the

    deposit accounts and otherwise to have access to the deposit accounts, account information and funds of the customer or (iii) one party provides the bank with a court order specifically awarding control of the funds in the deposit accounts to one party or the other."

23. Not having received any of the requested information or documentation, JPMC sent a further letter to OPSA dated January 21, 2015, a true and correct copy of which is attached as Exhibit G. This letter advised OPSA that JPMC had a copy of the Articles of Incorporation and Bylaws and that it appeared from the Bylaws that the Board members of the OPSA must be elected by a quorum of the members. The letter further stated that JPMC had been advised that the current Board had been elected in October 2014 but that JPMC had not received the minutes evidencing that election. The letter further stated that the Bylaws indicate that officers of the corporation must be elected and that while JPMC had December 2014 minutes indicating "appointment of certain officers by the purported then President, no documentation of any election of corporate officers had been provided." The letter further stated that while Mr. Moss represented that he was the authorized agent of the OPSA, JPMC had received no documentation confirming his actual hiring by the Board or any authorization by the Board for him to act as the Board's agent. The letter noted the previous hold placed on the Deposit Accounts and again stated that unless the uncertainty regarding who had authority over the accounts was resolved, that JPMC may seek a judicial determination of the respective rights of the parties through an interpleader suit.

24. On February 2, 2015, JPMC received a letter from the Geghamyan Law Office, a true and correct copy of which is attached as Exhibit H. ("the Geghamyan letter") JPMC understands that Ms. Geghamyan purports to represent the current officers and directors, including Defendants Nibbs and Butler. The letter stated that the current Board of Directors of the OPSA claims to have been elected at a meeting of the members that occurred on March 22, 2014, at which the following individual were elected or re-elected to the Board: Juanita Edington. Taylor Fischer, Sandy McDonald, Kedy Bayene, Charles Herring, Tom Sanders, and Billy Ward. No minutes of that meeting were attached to the letter, and the letter states that that

1  meeting was called on only four days notice, which is insufficient under Bylaw 5.3(b), which
2  requires ten days notice.

3      25.    The Geghamyan letter further stated that Board members Juanita Edington and
4  Sandra McDonald resigned in September of 2014, and that to fill those vacancies, a special board
5  meeting was held on September 3, 2014 and that as a result of that meeting Taylor Fischer
6  became the President of the OPSA and Kedy Bayenne became the Treasurer. As authority for this
7  procedure the letter cited Bylaw 6.10(n) which provides that the Board may, "Fill vacancies on
8  the Board except for a vacancy created by tehe removal of a Board member."  The letter failed to
9  discuss whether this provision conflicts with Section 9.3, which provides, "Replacement of
10 Directors or Officers shall be accomplished according to the same electoral practices that would
11 be used for the regular election of individuals to those positions."  The latter provision thus
12 indicates that Replacement Directors must be elected by the Members.  JPMC takes no positions
13 on how to reconcile these two provisions.  The same letter further informed JPMC that on or
14 about October 6, 2014, the Board "announced its decision" to fill the Board vacancies with Andre
15 Nibbs and Douglas Butler.  Although the letter purported to attach supporting corporate
16 documentation, there were no minutes attached of a Board meeting electing Nibbs and Butler as
17 Directors.

18     26.    The Geghamyan letter further informed JPMC that on December 3, 2014, the
19 OPSA had a member meeting with all the Board of Directors and Officers present and that during
20 this meeting, President Fischer voluntarily "ceded" the President's seat to Mr. Nibbs, and that
21 Bayenne assumed a non-officer Board member seat and that Douglas Butler "became" the
22 Treasurer.  No minutes of a Board meeting electing or appointing Mr. Nibbs and Mr. Butler to
23 these offices were attached to the letter, but the letter did attach an email sent to all board
24 members on Dec. 7, 2014, moving that Nibbs be President and Butler be Secretary.  Each board
25 member was asked to state whether he or she agreed or disagreed with the motion.  Five board
26 members signed the email stating that they agreed.  This was purportedly authorized by Bylaw
27 6.7, which states that the Board may take action without a meeting if "all" Directors consent in
28 writing to the action to be taken. Purported board members Butler and Nibbs did not send back

RC1/7769872.1/DJ2      - 7 -      COMPLAINT FOR INTERPLEADER AND DECLARATORY RELIEF

1  consent in writing, so it would appear that the consent of all directors was not obtained.

2      27.    The Geghamyan letter further stated that if the hold on the Deposit Accounts was not resolved by February 2, 2015 that "we will have no choice but seek the court's intervention in this matter and ask for damages."

3      28.    While JPMC does not take a position on which or on whether any of the competing factions has the right to control over the Deposit Accounts, the Geghamyan letter has left JPMC with reasonable doubt as to whether the current board was properly elected, whether Nibbs and Butler were properly elected as replacement directors, and whether Nibbs and Butler were properly elected as officers.

4      29.    JPMC has also been informed that there was a purported meeting of the members of the OPSA on Saturday, January 31, attended by twenty five members, which is less than a quorum. At the meeting, Nibbs, the current President and Butler, the current Treasurer reportedly expressed a desire not to continue on the Board. The Board apparently discussed a March election for a new Board.

**CLAIM FOR RELIEF: INTERPLEADER AND DECLARATORY RELIEF AGAINST ALL DEFENDANTS**

30.    Plaintiff hereby incorporates paragraphs 1-29 above as if fully set forth.

31.    Plaintiff JPMC has control over the Deposit Accounts which belong to the OPSA. Claims to control over these accounts have been raised by two competing groups of members, namely, the purportedly duly elected Board of Directors and Officers and the group of members represented by the Law Offices of John Burris. JPMC is free from any blame in causing this controversy to arise. The two competing groups are competing in whole or in part for control of the same money or property held by JPMC, namely the Deposit Accounts. The attorney for the duly elected Board has threatened litigation against JPMC if it does not give her clients control of the accounts. Due to these conflicting claims, JPMC has a real and reasonable fear of multiple liability by reason of the conflicting claims of the defendants. Plaintiff is also in great and reasonable doubt as to which defendant or defendants is entitled to have control over the accounts.

32. JPMC stands ready to tender to the clerk of court a check or checks for the balance in each of the Deposit Accounts.

WHEREFORE plaintiff JPMC demands that the Court adjudge:

1. The the defendants be required to interplead and settle between themselves their rights to the Deposit Accounts and that Plaintiff JPMC be discharged from all liability in the premises except to the person to whom the Court shall adjudge entitled to control the accounts.

2. That each of the defendants be restrained from instituting any legal action against Plaintiff for recovery or control of the accounts.

3. That plaintiff recover its costs and attorney's fees.

Dated:  February 3, 2015                    ROPERS, MAJESKI, KOHN & BENTLEY


By:/s/George G. Weickhardt
GEORGE G. WEICKHARDT
WENDY C. KROG
Attorneys for Plaintiff
JPMORGAN CHASE BANK, N.A., A
NATIONAL BANKING ASSOCIATION