MICHAEL K. BROWN/ CA SB# 106975
KATHERINE F. WENGER/ CA SB# 223045
BROWN, CHURCH & GEE LLP
200 Pringle Avenue, Suite 400
Walnut Creek CA 94596
Telephone: (925) 943-5000
Facsimile: (925) 933-2100
kwenger@bcglegal.com

ATTORNEYS FOR DEFENDANTS
Oregon Park Senior Apartments Cooperative,
Douglas Butler and Andre Nibbs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JPMORGAN BANK, N.A., A National Banking Association,<br><br>Plaintiff,<br><br>v.<br><br>OREGON PARK SENIOR APPARTMENTS COOPERATAIVE, a California Public Benefit Corporation, ANDRE NUBBS, an individual; DOUGLAS BUTLER, an individual; JUANITA EDINGTON, an individual; KEVIN WIGGINS, an individual; DALE ANDERS, an individual; WILLIAM TILLER, an individual, and KENNETH AKA AJA FESAH JACKSON, an individual,<br><br>Defendants. | CASE NO. 15-cv-00536-JSW<br><br>**NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF APPLICATION FOR APPOINTMENT OF A RECEIVER**<br><br>DATE:    4/24/15<br>TIME:    9:30 AM<br>DEPT.:    Courtroom 5, 2nd Floor |

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN that on April 24, 2015, at 9:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 5 of this court, located at 1301 Clay Street, 2nd Floor, Oakland, California, pursuant to Local Rule 7.2, Defendants Oregon Park Senior Apartments Cooperative, Douglas Butler and Andre Nibbs will move the court for an Order appointing a Receiver in the above entitled matter.

The motion will be based on this notice of motion, the memorandum served and filed herewith, on the records and file herein, and on such evidence as may be presented at the hearing

1

1 │ of the motion.

2 │ DATED: March 13, 2015                    BROWN, CHURCH & GEE, LLP

3 │

4 │

5 │                                          By: _____
                                                 KATHERINE F. WENGER
6 │                                          Attorneys for Defendants Oregon Park Senior
                                             Apartments Cooperative, Douglas Butler and
7 │                                          Andre Nibbs

8 │

9 │                 **MEMORANDUM OF POINTS AND AUTHORITIES**

10 │ **I.      INTRODUCTION AND SUMMARY OF FACTS**

11 │          Oregon Park Senior Apartments Cooperative is a 61 member non-profit mutual benefit

12 │ corporation ("OPSA" or the "Cooperative"), which owns and operates a senior apartment

13 │ complex located at 1425 Oregon Street, Berkeley, California (the "Property"). Declaration of

14 │ Andre Nibbs ("Nibbs Decl.") ¶ 3, Ex. A.  This Cooperative is governed by a 7 member volunteer

15 │ board of directors.  *Id.* All of the current board members (including Defendants Nibbs and Butler

16 │ who are collectively referred to as the "Current Director/Officer Defendants") are volunteers

17 │ who do not receive any compensation, and instead contribute their time in addition to the time

18 │ they spend at their regular jobs. *See id.* ¶¶ 3, 5, Ex. A; *see also* Declaration of Douglas Butler

19 │ ("Butler Decl.") ¶ 4.

20 │          At the end of 2014, after a new board of directors and new officers of the Cooperative

21 │ were appointed (including President Andre Nibbs and Treasurer Douglas Butler), *see* Nibbs

22 │ Decl. ¶ 4, Exs. B-G, and those directors and officers began investigating previous management

23 │ of the Cooperative, they discovered, among other things that (i) the Cooperative's bookkeeper,

24 │ Defendant William Tiller ("Tiller") was not following recommended accounting practices,

25 │ including making himself the only signatory on the Cooperative's bank accounts,  (ii) that the

26 │ Cooperative bookkeeper was making payments to himself and friends which were not supported

27 │ by any invoices, and (iii) monetary payments were being made to at least one former board

28 │ member, Juanita Edington ("Edington") in violation of the Cooperative's Bylaws.  Nibbs Decl.

                                                                                              2

1   ¶¶ 7-8, Ex. H; Butler Decl. ¶ 6, Ex. A.  As a result of this investigation and its findings the

2   Cooperative's board terminated Mr. Tiller and removed him as a signatory on the Cooperative's

3   bank accounts and added themselves (as President and Treasurer) as signatories on the

4   Cooperative's accounts.  Nibbs Decl. ¶¶ 9-10, Ex. I. *See also* Nibbs ¶ 3, Ex. A §§ 7.2, 7.5

5   (providing for President and Treasurer as being signatories on Cooperative's bank account)

6          After learning of Mr. Tiller's termination, his removal as a signatory and that Mr. Nibbs

7   and Mr. Butler (as President and Treasurer) had added themselves as signatories on the

8   Cooperative's bank account, *see* Nibbs Decl. ¶¶ 9-10, certain Cooperative members made false

9   and unfounded allegations to the Cooperative's bank (Plaintiff JPMorgan Chase N.A.) which

10   resulted in Chase freezing all of the Cooperative's Bank accounts. *See* Interpleader Complaint;

11   Nibbs Decl. ¶¶ 12-13; Butler Decl. ¶¶ 10-11.  These statements were made with the sole purpose

12   of attempting to bully the Current Directors/Officers into stopping their investigation and

13   stopping them from pursuing the evictions of various members (including Ms. Edington and Mr.

14   Wiggins), *See* Nibbs Decl. ¶ 7; Butler Decl. ¶ 5; Declaration of Katherine F. Wenger ("Wenger

15   Decl.") ¶ 6, Ex. H at pp. 1, 9-10, for non-payment of rent, rent which is necessary for the

16   Cooperative's day to day operation.[1]  As a result of this freeze, and subsequent efforts by the

17   Former Directors/Resident Defendants to prevent the Cooperative's current board of directors

18   from opening up a new bank account to operate out of, *see* Nibbs Decl. ¶ 14, the current board of

19   directors day to day operation of the Cooperative has been significantly impeded, among other

20   things putting OPSA at risk of defaulting on various loans and being unable to pay certain crucial

21   bills such as utility repair,  maintenance and insurance bills and thus risking that the value of the

22

23   [1] While the Former Directors/Residents initially made claims to Chase that Nibbs and Butler
     were not duly elected directors and officers, *see* Interpleader Complaint, they have now admitted

24   that they recognize that Nibbs and Butler are the President and Treasurer of the Cooperative, and
     that instead it is merely that are unhappy with the fact that (1) the Cooperative's former

25   bookkeeper was terminated and removed as a signatory on the Cooperative's bank account, (2)
     that Nibbs and Butler added themselves as signatories on the Cooperative's bank account, and

26   that (3) the current directors are undertaking efforts to recover past due rent from members
     including Ms. Edington and Mr. Wiggins themselves.  Wenger Decl. ¶¶ 7-8, Exs. I-K.  All of

27   these actions are not only fully within the board of directors' powers under the Cooperative's
     bylaws, but a failure to undertake such action would constitute a breach of the Directors

28   fiduciary obligations.  *See* Nibbs Decl. ¶ 3, Ex. A. §§ 7.2, 7.5.

3

1  Property will be significantly impaired.  Nibbs Decl. ¶¶ 15-17; Butler Decl. ¶¶ 14-17.  *See also*
2  Interpleader Complaint.

3       Furthermore, due to numerous threats made by the Former Directors/Residents to the
4  Cooperative's current directors, and the Former Directors/Residents instruction to various
5  residents to refuse to pay rent in "protest" to the current directors' investigation, an atmosphere
6  has been created in which has made governance of the Cooperative by the current directors
7  virtually impossible.  Nibbs Decl. ¶¶ 16, 19. Declaration of Henri Davis ¶¶ 6-7,  Butler Decl. ¶¶
8  14-15.

9       The Current Directors/Officers, through their counsel have made numerous efforts to
10  implement mechanisms to simply allow them to use funds from the Cooperative's Chase account
11  in order to pay basic bills such as utilities, repairs, maintenance and insurance.  Unfortunately
12  none of these efforts have been successful.  Declaration of Katherine Wenger ("Wenger Decl.") ¶
13  4, Exs. A-B. *See also id.* ¶ 10, Ex. N.

14       Therefore, for all these reasons, pursuant to Federal Rule of Civil Procedure 66,
15  Defendants Oregon Park Senior Apartments Cooperative ("OPSA"), Andre Nibbs and Douglas
16  Butler request that the Court enter an order appointing a receiver to operate the Cooperative until
17  a new board can be elected in the form attached hereto as <u>Exhibit 1</u>.  The Current Directors have
18  already proposed this solution to Plaintiff as well as Former Directors/Residents and none of
19  these other parties object to the appointment of a receiver. Wenger Decl. ¶ 6, Exs. D-G, Ex. H at
20  pp. 9-10.

21  **II.    LEGAL ANALYSIS**

22       Pursuant to Federal Rule of Civil Procedure section 66, a federal court has the power in
23  equity to appoint a receiver in order to protect a party's interest in property.  Fed. R. Civ. Proc.
24  66; *Varsames v. Palazzolo* 96 F. Supp. 2d 361, (S.D.N.Y. 2000).[2]  *See also, e.g., Matter of*
25  *McGaughey* 24 F.3d 904, 907 (7th Cir.) (Federal courts have an inherent equitable power to

26

27  _____
    [2] Whether a federal court should appoint a receiver in a diversity action, such as the one here, is
28  governed by federal law. *Varsames,* 96 F. Supp. at 363.

1    appoint a receiver to manage a defendant's assets during the pendency of litigation); *Tanzer v.*

2    *Huffines*, 408 F.2d 42, 45-46 (3d Cir. 1969) (same).  Under Federal law, appointment of a

3    receiver is not a drastic remedy. *U.S. v. Berk & Berk,* 767 F. Supp. 593, 597 (D.N.J. 1991)

4    (appointment of receiver to manage apartment complex).  The decision of whether to appoint a

5    receiver is committed to the sound direction of the trial court.  Fed. R. Civ. Proc. 66, 22

6    U.S.C.A.; *Varsames*, 96 F. Supp. 2d at 363.  The factors that may be considered include, among

7    other things, (1) the danger that the property at issue will be injured or diminished in value, (2)

8    inadequacy of legal remedies, and (3) the probability that harm caused by the denial of the

9    appointment of a receiver would be greater than the injury to the parties opposing appointment.

10   *Wells Fargo Bank N.A. v. CCC Atlantic, LLC* 905 F.Supp.2d 604, 617 (D.N.J. 2012) (receiver

11   appointed to collect rents and income and operate and manager commercial property at issue).

12   *See also Canada Life Assur. Co. v. LaPeter* 563 F.3d 837, 845 (9th Cir. 2009) (court has broad

13   equitable power in determining whether to appoint a receiver, it ma y consider a host of factors,

14   and no one factor is dispositive).

15       Here, there are a number of factors which each independently supporting appointment of

16   a receiver.

17       **A.     Neither Plaintiff nor the Former Director/Resident Defendants Object to the**
             **Appointment of a Receiver**
18

19       First, as an initial matter, both Chase and the Former Directors/Residents have informed

20   the Current Directors/Officers that they do not object to the appointment of a receiver. *See*

21   Wenger Decl. ¶ 6, Exs. D-H.  The only reason that the parties have not been able to stipulate to

22   the appointment of receiver is that while both Chase and the Former Directors/Residents agree to

23   a receiver being appointed, the Former Directors/Residents have attempted to condition such a

24   stipulation appointing that receiver on matters unrelated to this interpleader action.[3]  Wenger

25   _____

26   [3] In particular, with regards to the Former Directors/Residents, they have indicated they are ready
     to sign the stipulation proposed by the Current Directors/Officers appointing Mr. Stapleton as a
27   receiver but only if OPSA dismisses several unlawful detainer actions (currently pending before
     the Alameda Superior Court) that have been brought against Defendants Edington and Wiggins
28   as wells as certain unlawful detainer actions pending against other residents (and demand that the
     Current Directors/Officers do so despite the fact that all of these individuals admit that there is

                                                                                                    5

Decl. ¶ 6, Ex. H at pp. 9-10.

**B.    A Receiver is Necessary Due to the Dispute Over Governance of the Cooperative**

Second, due to the false statements made by the Former Director/Resident Defendants to Plaintiff and other financial institutions where the Current Director/Officer Defendants have attempted to open up bank accounts, the Former Director/Resident Defendants have put the Cooperative in a position where, at this time, there is no way to be able to completely and effectively manage the Cooperative's day to day operations.[4]  Nibbs Decl. ¶¶ 16-17, 20; Butler Decl. ¶¶ 14-17, 19-20; Wenger Decl. ¶ 10, Ex. N.

While the Former Director/Defendants now admit that Mr. Nibbs and Mr. Butler are current directors and officers of the Corporation (in particular that Mr. Nibbs is President and Mr. Butler is treasurer), *see* Wenger Decl. ¶¶ 7-8, Exs. I-K, they somehow claim that Mr. Nibbs and Mr. Butler have no right to be signatories on the Cooperative's bank accounts, and refuse to disclaim their interest in the funds being held by Plaintiff.  *See id.* ¶ 10, Ex. N.  As a result, the Current Directors/Officers ability to operate the Cooperative is being made virtually impossible not only by its lack of access to the Cooperative's funds, but by threats that are being made against them by the Former Director/Resident Defendants.  *See, e.g.,* Nibbs Decl. ¶¶ 15-17, 19-20;  Butler ¶¶ 13-17, 19.

**C.    Without a Receiver, the Cooperative's Property is In Danger of Being Diminished in Value**

Third, without a receiver in place, the Cooperative will be unable to pay all of its bills, including things such as utilities, insurance, maintenance and repair costs, and loans that are outstanding on the Property.  Nibbs Decl. ¶¶ 16-19; Butler Decl. ¶¶ 14, 17, 19.  Among other things, this places the Property in danger of foreclosure and of impairment of property.  *Id.*;

---

past due rent that they owe OPSA).  Wenger Decl. ¶ 6, Ex. H at pp. 1, 9-10.

[4]In particular, while the Former Directors/Residents are attempting to argue that the Current Directors/Officers should not be permitted to run the Cooperative, they are not suggesting that there is any one else who has the authority to do so. *See, e.g.,* Wenger Decl. ¶ 7, Ex. I.

1    Butler Decl. ¶ 20.

2        **D.    Legal Remedies are Inadequate**

3        Fourth, monetary damages will not be adequate due to the fact that that the Former

4    Directors/Residents actions have put the Cooperative at risk of not being able to pay for things

5    such as loans, utilities, repairs and maintenance, and insurance, potentially endangering the

6    residents of the Cooperative beyond what money could compensate for.  Nibbs Decl. ¶¶ 16, 18;

7    Butler Decl. ¶¶ 17, 20.

8        **E.    No Less Drastic Remedies Are Available**

9        Fifth, the Current Directors/Officers have proposed numerous solutions both to Chase

10   and to the Former Directors/Residents to attempt to allow the Cooperative to operate on a day to

11   day basis.  Wenger Decl. ¶¶ 4, 10.  Exs. A-B, N.  Unfortunately none of these proposals have

12   been agreed to.  While Chase has not disagreed with the principal of the ideas that the Current

13   Directors/Officers have proposed, they have indicated that unfortunately the proposals made are

14   simply not logistically possible given how their banking systems are set up.  *Id.*

15       Furthermore, the current proposed order appointing a receiver is appropriately limited in

16   scope.  In particular, under such order the receiver is only appointed to serve until (1) the parties

17   reach agreement otherwise, (2) a new board of directors is duly elected in full compliance with

18   the Cooperative's Bylaws,[5] and/or (3) the Court finds other good cause for discharge of the

19   receiver.  *See* Exhibit 1.

20       **F.    Appointing the Receiver Will Do More Good Than Harm**

21       Sixth, there is no evidence of any harm that the appointment of a receiver would cause

22   the Cooperative. Instead, for all the reasons above, given the circumstances the only result it will

23   have is benefit to the Cooperative.

24       **G.    The Receiver Proposed by the Current Directors/Officers is More than Well
25            Qualified**

26       Last, the Current Directors/Officers have identified and proposed David Stapleton to

27   _____

28   [5] The annual election of directors is currently set for March 28, 2015.  Nibbs Decl. ¶ 18.

7

1  serve as a receiver.  *See* Declaration of David Stapleton ¶¶ 1-9, Exs. A-B.  As can be seen from

2  Mr. Stapleton's resume, he is more than qualified to undertake this role.  Neither Plaintiff nor the

3  Former Directors/Residents have objected to Mr. Stapleton being the selected receiver.  *Id.*

4  **III.   CONCLUSION**

5       For all the foregoing reasons, Defendants OPSA, Nibbs and Butler request that the Court

6  enter the order attached as <u>Exhibit 1</u>, appointing a receiver to operate the Cooperative pending

7  agreement by the parties and/or the election of a new board of directors in compliance with the

8  Cooperative's Bylaws.

9  DATED:    March 13, 2015                    BROWN, CHURCH & GEE, LLP

10

11

12  By:   _____

13        KATHERINE F. WENGER
        Attorneys for Defendants Oregon Park Senior
14      Apartments Cooperative, Douglas Butler and
        Andre Nibbs

15

16

17

18

19

20

21

22

23

24

25

26

27

28

8

EXHIBIT 1

1  MICHAEL K. BROWN/ CA SB# 106975
   KATHERINE F. WENGER/ CA SB# 223045
2  BROWN, CHURCH & GEE LLP
   200 Pringle Avenue, Suite 400
3  Walnut Creek CA 94596
   Telephone: (925) 943-5000
4  Facsimile: (925) 933-2100
   kwenger@bcglegal.com
5
   ATTORNEYS FOR DEFENDANTS
6  Oregon Park Senior Apartments Cooperative,
   Douglas Butler and Andre Nibbs
7

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10 JPMORGAN BANK, N.A., A National      CASE NO. 15-cv-00536-JSW
   Banking Association,
11
              Plaintiff,               **[PROPOSED] ORDER FOR**
12                                     **APPOINTMENT OF TEMPORARY**
   v.                                  **RECEIVER**
13
   OREGON PARK SENIOR APARTMENTS
14 COOPERATAIVE, a California Public
   Benefit Corporation,
15 ANDRE NIBBS, an individual;
   DOUGLAS BUTLER, an individual;
16 JUANITA EDINGTON, an individual;
   KEVIN WIGGINS, an individual;
17 DALE ANDERS, an individual;
   WILLIAM TILLER, an individual, and
18 KENNETH AKA AJA FESAH JACKSON,
   an individual,
19
              Defendants.
20
21        Based upon the Application of Defendants Oregon Park Senior Apartments Cooperative,

22 Douglas Butler and Andre Nibbs, for the immediate appointment of a temporary receiver, and for

23 good cause shown, IT IS HEREBY ORDERED:

24        IT IS HEREBY ORDERED:

25        1.      David Stapleton, whose resume is attached hereto as Exhibit A, is hereby

26 appointed Received of Defendant Oregon Park Senior Apartments Cooperative, a California

27 Public Benefit Corporation ("OPSA"), in this action, subject to the condition that before entry

28 upon his duties as Receiver, he shall execute the oath to faithfully perform his duties as the

                                                                                          1

1  Receiver and shall file a bond in the amount of $10,000.00.

2  **I.     RELIEF GRANTED**

3  ORDER AGAINST TRANSFER, DISSIPATION, AND DISPOSAL OF ASSETS. IT
4  IS HEREBY ORDERED that:

5  1.     From the date of the entry of this order forward, Defendants and their agents
6  and employees are restrained and enjoined from directly or indirectly transferring, selling,
7  alienating, liquidating, re-conveying, encumbering, pledging, leasing, loaning, assigning,
8  concealing, dissipating, converting, withdrawing, or otherwise disposing of any assets, held in
9  the name of OPSA, wherever located, including assets held outside the United States, or as
10  otherwise ordered by the Court. The assets affected by this paragraph shall include both existing
11  assets and assets acquired after the effective date of this Order.

12  2.     From the date of the entry of this order forward, Defendants, and any of their
13  agents, servants, employees, attorneys, and persons in active concert of participation with them
14  who receive actual notice of this Order by personal service or otherwise, including facsimile
15  transmission, are restrained and enjoined from directly or indirectly transferring, selling, re-
16  conveying, alienating, liquidating, encumbering, pledging, leasing, loaning, assigning,
17  concealing, dissipating, converting, withdrawing, or otherwise disposing of any assets or lien
18  rights held in the name of OPSA, wherever located, including assets held outside the United
19  States.

20  **II.    CHASE TURNOVER OF DEPOSIT ACCOUNTS AT ISSUE**

21  IT IS FURTHER ORDERED, that

22  1.     Plaintiff shall close (i) the OPSA account numbers ending 1307, 5229 and 2261
23  which are the subject of the interpleader, and (ii) any other accounts held in the name of OPSA,
24  and shall pay the balance in each one by check made payable to David Stapleton as Receiver for
25  OPSA.  Notwithstanding any of the foregoing, Plaintiff shall be permitted to maintain the reserve
26  account numbering ending 9027 opened by OPSA as a condition of its loan with Plaintiff, and
27  nothing in paragraph in II-1-(ii) shall require Plaintiff to close and/or turn over any funds held in
28  such reserve account.

2

2.      Using commercial best efforts, provide the Receiver, within five (5) business days of receiving a copy of this Order, a statement setting forth: (a) the identification number of each and every such account or asset titled in the name, individually or jointly, of OPSA, or held on behalf of, or for the benefit, of OPSA: (b) the balance of each such account, as of the close of business on the day on which this Order is served.

3.      Upon request by the Receiver, promptly provide the Receiver with copies of all records or other documentation pertaining to any account or asset held in the name of OPSA, including, but not limited to, originals or copies of account applications, account statements, escrow agreements, loan documents, deeds of trust, servicing agreements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and safe deposit box logs.

**III.    DIRECTIVES TO OTHER FINANCIAL INSTITUTIONS**

IT IS FURTHER ORDERED, pending further Order of this Court, that excluding Plaintiff, any other financial or brokerage institution, business entity, or person that holds, controls or maintains custody of any account or asset of OPSA, or has held, controlled or maintained custody of any account or asset of OPSA at any time since January 1, 2004, shall:

1.      Prohibit Defendants and all other persons other than the Receiver from withdrawing, removing, assigning, re-conveying, transferring, pledging, encumbering, disbursing, dissipating, converting, releasing, selling or otherwise disposing of any such asset or lien interest held in the name of OPSA except as directed by further order of the Court"

2.      Using commercial best efforts, provide the Receiver, within five (5) business days of receiving a copy of this Order, a statement setting forth: (a) the identification number of each and every such account or asset titled in the name, individually or jointly, of OPSA, or held on behalf of, or for the benefit, of OPSA: (b) the balance of each such account, as of the close of business on the day on which this Order is served.

3.      Upon request by the Receiver, promptly provide the Receiver with copies of all records or other documentation pertaining to such account or asset, including, but not limited to, originals or copies of account applications, account statements, escrow agreements, loan

documents, deeds of trust, servicing agreements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and safe deposit box logs.

**IV.   MAINTENANCE OF BUSINESS RECORDS**

IT IS FURTHER ORDERED that:

1.      Defendants and all persons or entities who receive notice of this Order by personal service or otherwise, are restrained and enjoined from directly or indirectly destroying, mutilating, erasing, altering, concealing or disposing of, or otherwise restricting access to, in any manner, directly or indirectly, any documents that relate to the business practices or business finances of OPSA.

**V.   INSPECTION AND COPYING OF BOOKS AND RECORDS**

IT IS FURTHER ORDERED that:

1.      The Receiver be immediately allowed to inspect the books, records, and other documents of OPSA that are held by any of the Defendants in this matter.

2.      Defendants shall cooperate fully with the Receiver to locate and provide to representatives of the Receiver all books and records of OPSA, wherever such books and records may be situated.

**VI.   POWERS AND RESPONSIBILITIES OF THE RECEIVER**

IT IS FURTHER ORDERED that the Receiver is directed and authorized to accomplish the following:

1.      The Receiver is required to disclose to all parties any financial relationship between the Receiver and any company that he hires to assist in the management of the Receivership estate;

2.      The Receiver is authorized and empowered with the right to demand, collect and receive all monies, funds, loan payments, rent and any other payments arising from OPSA's activities in the name of OPSA.

3.      Assume full control, management and administration of OPSA by performing all acts incidental thereof that the Receiver deems appropriate, including the removal any officer,

director, independent contractor, employee, or agent of OPSA, from control and management of the affairs of OPSA as Receiver deems necessary.

4.     Take exclusive custody, control and possession of all facilities and offices of OPSA, together with all the bank accounts, funds, property, permits, mail and other assets of, in the possession of, or under the control of OPSA (except as provided in Section II.1 with respect to Chase reserve account number ending 9027), wherever situated.   The Receiver shall have full power to sue for, collect, receive and take possession of all goods, chattels, rights, credits, moneys, loans, deeds of trust, effects, land, leases, books, records, work papers, and records of accounts, including computer-maintained information, and other papers and documents of OPSA.  The Receiver shall have discretion to determine that certain personal property or other assets of OPSA shall be under the Receiver's control, but shall remain in the possession or custody of OPSA;

5.     The Receiver is authorized to employ property managers, contractors, servants, agents, employees, appraisers, guards, clerks, accountants, attorneys and management consultants, to administer the Receivership estate and to protect its assets and security interests as it shall deem it necessary; to purchase materials, supplies and services and to pay therefore at the usual rate and prices out of funds that shall come into his possession; to pay the reasonable value of said services out the proceeds of the estate; to compromise. debts related to any security interests and/or obligations owing to or by OPSA and to do all things and to incur only those obligations ordinarily incurred in connection with the operation of similar enterprises and that no risk or obligation incurred by said Receiver pursuant to this appointment shall be a personal risk or obligation of the Receiver or OPSA, but shall be the risk or obligation of the Receivership estate. The Receiver may make payments and disbursements from the receivership estate that are necessary or advisable for carrying out the directions of, or exercising the authority granted by, this Order.

6.     If there is insufficient commercial insurance coverage for OPSA, it is hereby ordered that the Receiver shall have thirty (30) working days to procure said insurance on the Premises, provided the Receiver has funds available to do so, and during said period, said

5

Receiver shall not be personally responsible for claims arising from or for the procurement of insurance;

7.      Take all steps necessary to secure the business premises of OPSA under the control of OPSA or its agents;

8.      Preserve, hold and manage all receivership assets, and perform all acts necessary to preserve the value of those assets;

9.      At the Receiver's discretion to initiate, maintain, defend, compromise, adjust, intervene in, dispose of, or become a party to any actions or proceedings in state, federal or foreign court necessary to preserve or increase the assets of OPSA or to carry out his duties pursuant to this Order.  This shall include the power of the Receiver to substitute in as plaintiff in the unlawful detainer actions that have been filed by OPSA and that are currently pending in Alameda Superior Court.  The Receiver is authorized to institute ancillary proceedings in this State or other States as is necessary to obtain possession and control of the Premises, and the Receiver may engage the services of counsel if necessary. The Receiver may pay for such services from the funds of the Receivership estate;

10.      Choose, engage and employ attorneys, accountants, appraisers, builders, construction .companies, and other independent contractors and technical ·specialists, as the Receiver deems advisable or necessary in the performance of duties and responsibilities under the authority granted by this Order;

11.      Issue subpoenas to obtain documents and records pertaining to the receivership, and conduct discovery in this action on behalf of the receivership estate;

12.      Open one or more bank accounts as designated depositories for funds of OPSA, provided that all funds on deposit are insured by an agency of the United States Government. The Receiver shall deposit all funds of OPSA in such designated accounts and shall make all payments and disbursements from the receivership estate from such accounts;

13.      The Receiver shall charge his customary hourly fees, as set forth in <u>Exhibit B</u>, provided, however, that (a) such fee shall first be reviewed and approved by the Court after appropriate notice to the parties, and (b) the fees shall be paid from the gross receipts or liquid

1    assets of OPSA, if any.

2        14.     In addition to the foregoing, the Receiver shall be entitled to reimbursement from

3 the estate funds for any and all out-of-pocket expenses reasonably incurred in connection with

4 the services to be rendered pursuant hereto, excluding general overhead and office administrative

5 expenses of the Receiver;

6        15.     During the term of the Receivership, the Receiver shall use, operate and manage

7 the business premises of OPSA, as follows:

8        16.     The Receiver shall prepare periodic interim statements reflecting the Receiver's

9 fees and administrative costs and expenses incurred for said period in the operation and

10 administration of the Receivership estate. Upon completion for an interim statement, and the

11 mailing of said statement to the parties' respective attorneys of record or any other designated

12 personal agent, the Receiver shall pay from OPSA funds, if any, the amount of said statement.

13 Despite the periodic statement of Receiver's fees and administrative expenses, and the payment

14 thereof, such fees and expenses shall remain subject to final Court approval and confirmation, in

15 the form of either noticed interim request for fees and an opportunity by any opposing party to

16 request a hearing, stipulation among the parties or Receiver's final account and report;

17        17.     The Receiver, or any party to this action, may from time to time, and on due

18 notice to all parties, make application to this Court for further orders instructing said Receiver;

19 and

20        18.     The Receiver may not take any steps to liquidate the assets of OPSA outside the

21 ordinary course of its business, except by further order of this Court.

22 **VII.   MARCH 28, 2015 ELECTION OF DIRECTORS**

23        On or before March 28, 2015, or within 15 days of entry of this order, whichever is later,

24 the Receiver shall conduct an election of OPSA's Board of Directors as provided for in OPSA'

25 Bylaws.  Such election will be monitored by the League of Women Voters to assist in

26 monitoring the election.

27 **VIII.   STAY OF ACTIONS**

28        IT IS FURTHER ORDERED that:

1.     Except by leave of this Court, during pendency of the receivership ordered herein, with the exception of this action, Plaintiff, Defendants, and all other persons and entities other than the Receiver are hereby are stayed from taking any action to establish or enforce any claim, right, or interest for, against, on behalf of, in, or in the name of OPSA, any of their subsidiaries, affiliates, partnerships, or the Receiver or the Receiver's duly authorized agents acting in their capacities as such, including, but not limited to, the following actions:

a.     Commencing, prosecuting, continuing, entering, or enforcing any suit or proceeding, except that such action may be filed to toll any applicable statute of limitations;

b.     Accelerating the due date of any obligation or claimed obligation; filing, perfecting or enforcing any lien; taking or attempting to take possession, custody, or control of any collateral held in the name of OPSA, attempting to foreclose, forfeit, alter, or terminate any interest in any collateral held in the name of OPSA or managed by OPSA, whether such acts are part of a judicial proceeding, are acts of self-help, or otherwise, or setoff any debt owing to OPSA that arose before the date of this Order against any claim against OPSA;

c.     Executing, issuing, serving, or causing the execution, issuance or service of, any legal process, including, but not limited to, attachments garnishments, subpoenas, writs of replevin, writs of execution, or any other form of process whether specified in this Order or not; or

d.     Doing any act or thing whatsoever to interfere with the Receiver taking custody, control, possession, or management of any assets of OPSA, whether or not subject to actual or purported security interests, or documents subject to this receivership, or to harass or interfere with the Receiver in any way, or to interfere in any manner with the exclusive jurisdiction of this Court over the assets of OPSA.

2.     Notwithstanding any of the foregoing, nothing in paragraph VIII-1, shall prohibit Plaintiff from pursuing any legal rights and/or remedies it has resulting from its lending relationship with OPSA.

## IX.   PRELIMINARY INJUNCTION IN AID OF RECEIVERSHIP

OPSA, and its agents, servants, and employees, and all persons or entities acting under,

8

or in concert with it, or for it, is ordered to do the following and is restrained and enjoined from engaging in, or performing, directly or indirectly, any or all of the followings acts:

     1.     Interfering, hindering or molesting in any way whatsoever the Receiver in the performance of the Receiver's duties herein described and in the performance of any duties incident thereto;

     2.     Transferring, directly or indirectly, any interest by sale except in the ordinary course of business, the assets of OPSA, or those assets managed by OPSA, and all proceeds and products thereof;

     3.     Transferring, concealing, destroying, defacing or altering any of OPSA's books and records;

     4.     Diverting in any way any of the proceeds from OPSA;

     5.     OPSA shall immediately upon receipt turnover to the Receiver all mail relating to the Company;

     6.     Except as provided in Section II.1 with respect to Chase reserve account number ending 9027, failing or refusing to immediately turn over to the Receiver all monies, checks, funds or  Proceeds relating to OPSA and belonging to or for the benefit of OPSA, and all books and records of OPSA;

## X.     NO ADMISSION OF LIABILITY

Nothing in this stipulation and order shall constitute an admission by any party regarding the validity of any of Plaintiff's claims in this matter.

## XI.     FORCE AND EFFECT

IT IS FURTHER ORDERED that this Order shall remain in full force and effect until (1) agreement by all parties, (2) upon entry of an order by the Court finding that a new board of directors has been duly elected in full compliance with OPSA's Bylaws, (3) upon  entry of an order by the Court finding good cause for removal of the Receiver, or (4) by further order of this Court.  Any orders referenced above, shall be requested via a noticed motion in compliance with Federal Rule of Civil Procedure 7 and Northern District Local Rule 7, as well as the Court's current standing orders

1        SO ORDERED.

2

3   DATED:_____            _____
                                          HON. JEFFREY S. WHITE
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                                                    10

EXHIBIT A

# DAVID P. STAPLETON

david@stapletoninc.com                                       515 S. Flower Street, 36th Floor
+1.213.235.0601                                                   Los Angeles, CA 90071

## BUSINESS ─────────────────────────────

**Stapleton Group**                          *Los Angeles, San Diego, Seattle, Las Vegas &Phoenix*
*President*                                                              *2008 – Present*

Provide court appointed fiduciary and consulting services including: receivership, bankruptcy, business and real estate management.

- Provide bankruptcy, receivership and consulting services to over 100 companies and real estate assets with values in excess of $1 billion.
- Served as Receiver for multiple single family homes. Manage, repair and sell homes. Work with local agencies related to homes.
- Reposition, manage, analyze and sell real estate assets including: single family, multifamily, retail, office, condo, land, hotel and industrial properties.
- Manage and operate condominium and related boards.  Carry out duties and manage collections and payment of expenses.
- Served as a Receiver for a manufacturing company with over $50 million in annual sales.  Successfully managed the liquidation of inventory, accounts receivable and other assets.
- Serve as a financial advisor to multiple companies to prepare and implement: turnaround plans, creditor communication / negotiation and cash flow management / improvement.
- Served as Receiver for a wholesale business with ten locations.  Manage the consolidation, sale of the business as a going concern, liquidation of inventory, going out of business sale and collection of accounts receivable.
- Operated a food manufacturing and distribution company with sales in excess of $200 million. Supervised sales, operations, litigation and collection of delinquent accounts.
- Provide forensic accounting and reporting services.

**HomeFed Corp. / Leucadia National Corp.**                          *California*
*Acquisitions*                                                              *2007 – 2008*

Led team to identify, value, restructure, and acquire real estate assets and companies.

- Identified condo, land, office, retail and land opportunities for potential acquisition throughout the United States.
- Led teams to conduct underwriting, due diligence and financial analysis of acquisition targets. Developed standardized criteria for underwriting.
- Negotiated and closed the purchase of general partnership interests in real estate projects. Managed restructuring through Ch.11 bankruptcy process.
- Analyzed entitlements, land plans, development agreements and tax incremental financing for company assets and acquisition targets.

**DWC** *California*
*Director, Management & Operations* *2002 – 2007*

Led expansion of company's restructuring and receivership practice from Western United States to a national platform. Led receivership engagements to stabilize and operate multiple troubled assets and loans.

- Managed receiverships and turnarounds for businesses and properties with total value in excess of $2 billion.
- Managed the work out and repositioning of multiple condominium properties.
- Liquidated assets and collected receivables of receivership estates.
- Performed financial analysis and developed workout strategies for multiple troubled companies and assets.
- Managed condo developments, golf courses, residential development communities, hotels, resorts, and multifamily properties in receivership.

**PricewaterhouseCoopers LLP** *Various locations;*
*Transaction Services & Advisory*

*London, UK / Frankfurt, Germany*
*1997 – 2001*

Managed a consulting team during the restructuring of Deutsche Telekom's cable businesses and subsequent sale for approximately €1 billion each.

- Managed purchasers and global banking, legal, and accounting professionals to ensure the successful preparation of the OMs and filings of debt registrations.
- Analyzed global sales contracts unique accounting requirements and/or terms detrimental to management objectives for Hewlett-Packard, Europe.
- Advised high-tech European clients regarding impacts of purchase transactions and valuations of equity instruments.

*Transaction Services & Advisory* *New York, NY / California*

- Planned and supervised IPO and disposition engagements for technology companies including: Qualcomm and Verance Corporation.
- Prepared and reviewed multiple SEC filings.
- Performed complex impairment analyses of Qualcomm's investments and vendor-financed loans, including Globalstar, LP.

**US Army Reserve Officers Training Corps** *New Orleans, LA*
*Platoon Leader* *1993 – 1996*

- Received four-year ROTC scholarship and supervised the training and development of 30 men and women.

**ACADEMIC**

- MBA, San Diego State University
- BS, Tulane University

**OTHER**

- Certified Public Accountant *(2000 – 2007)*
- Organizations: Turnaround Management Association, CENTS, Bankruptcy & Receiver Forums, American Bankruptcy Institute, United Way

EXHIBIT B



STAPLETON GROUP

*Effective January 1, 2013:*

### SCHEDULE OF HOURLY RATES BY POSITION*

| | |
|---|---|
| Principal / Liquidating Trustee | $295 |
| Managing Director | $275 |
| Director | $250 |
| Senior Accountant | $200 |
| Associate Director | $110 |
| Staff Accountant | $110 |
| Clerical | $ 85 |

### REIMBURSABLE COSTS**

| | |
|---|---|
| Postage | At cost |
| Photocopies | $.12 per copy |
| Messenger/Delivery | At cost |
| Court Filing Service | At cost |
| Telephone | At cost |
| Bond | At cost |
| Travel, Meals & Expenses | At cost |

\*   *Rates for specific personnel may vary slightly from the above based on experience levels, but will not exceed these values for the given category of work performed.*

\*\*  *Other direct costs we incur in connection with our services, such as outside attorneys, accountants and other professionals, may be reimbursable based on the terms of our agreement.*

**PROOF OF SERVICE**

I am employed in the County of Contra Costa, State of California.  I am over the age of 18 years, and not a party to the within action.  My business address is: 200 Pringle Avenue, Suite 400, Walnut Creek, California.  On the date set forth below I served the foregoing document described as:

1)   Notice of Motion and Memorandum of Points nd Authorites in Support of Application for Appointment of a Temporary Receiver;
2)   Declaration of Andre Nibbs in support thereof;
3)   Declaration of Douglas Butler in support thereof;
3)   Declaraton of Katherine F. Wenger in support thereof; and
4)   [Proposed] Order Granting Appointment of a Temporary Receiver

on the parties or attorneys for parties in this action who are identified below, using the following means of service.

| | |
|---|---|
| George G. Weickhardt, Esq.<br>Ropers, Majeski, Kohn & Bentley<br>150 Spear Street, Suite 850<br>San Francisco, CA 94105 | Attorneys for Plaintiff<br>Tel:     (415) 543-4800<br>Fax:    (415) 972-6301<br>Email:  George.weickhardt@rmkb.com |

___x___          **BY ELECTRONIC TRANSMISSION.**  I caused a true and correct copy of the aforementioned document to be transmitted to the parties above via the electronic filing system of the United Stated District Court.

| | |
|---|---|
| Juanita Edington<br>1425 Oregon Street, Unit P-2<br>Berkeley, CA 94702 | Defendant In Pro Per |
| Kenneth Jackson<br>1425 Oregon Street, Unit M-4<br>Berkeley, CA 94702 | Defendant In Pro Per |
| Kevin Wiggins<br>1425 Oregon Street, Unit K-1<br>Berkeley, CA 94702 | Defendant In Pro Per |

___x___          **BY MAIL.**  I placed a true and correct copy of the aforementioned document in a sealed envelope individually addressed to each of the parties and caused each such envelope to be deposited with the U.S. Postal Service and/or picked up by an authorized representative, on that same day with fees fully prepaid at Walnut Creek, California, in the ordinary course of business.

___X___          I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on March 13, 2015, at Walnut Creek, California.

_Donna J Meadors_
DONNA J. MEADORS

PROOF OF SERVICE